UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD E. VERBICK, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE MOVEMENT TECHNOLOGY COMPANY, INC., a Washington corporation; PREDICTUV TECHNOLOGIES, INC., a Delaware corporation; PREDICTUV LLC, a Delaware limited liability company; KELVIN HILL, an individual; ZSOLT CSENDE, an individual; VIVIEN SZAKACS, an individual; CHRISTOPHER KEIL, an individual; NIALL LAWLOR, an individual; GERRY LAWLOR, an individual; ROB GRINNELL, an individual; and DOES 1 to 100,<br><br>Defendants. | Case No.: 20-CV-611 TWR (DEB)<br><br>**ORDER (1) GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND (2) DISMISSING WITHOUT PREJUDICE PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(ECF No. 52) |

Specially Appearing Defendants The Movement Technology Company, Inc. ("TMC"), Kelvin Hill, Zsolt Csende, and Vivien Szakács have moved to dismiss Plaintiff Todd E. Verbick's First Amended Complaint or, alternatively, to transfer venue ("MTD,"

1

ECF No. 52).   Plaintiff opposes ("Opp'n," ECF No. 58) and Defendants filed a Reply in Support of the Motion to Dismiss ("Reply," ECF No. 59).   The Court finds the issues suitable for disposition without oral argument.   *See* Civ. L.R. 7.1(d)(1).   For the reasons set forth below, the Court **GRANTS** Defendants' Motion to Dismiss.

## BACKGROUND

### I.   Factual Background

Defendant TMC is a Washington corporation headquartered in Seattle, Washington. (ECF No. 50 ("FAC") ¶ 23.)   Defendant Kelvin Hill is a principal of TMC and a resident of the State of Washington.   (*Id.* ¶ 5.)   Defendant Zsolt Csende is a principal of TMC, a shareholder in Defendant Predictuv Technologies, and his place of residence is unknown to Plaintiff.   (*Id.* ¶ 6.)   Defendant Vivien Szakács is a principal of TMC, and her place of residence is unknown to Plaintiff.   (*Id.* ¶ 8.)

On October 19, 2017, Defendants Niall Lawlor, Jerry Lawlor, and Rob Grinnell (making up Defendant Predictuv Technologies Inc.) met in San Diego, California, with TMC's then-CEO, Dean Granziano.   (*Id.* ¶ 18.)   This meeting initiated Predictuv Technologies' acquisition of TMC.   (*Id.*)   Around October 30, 2017, Plaintiff Verbick purchased a Convertible Security from TMC for $25,000, which entitled him to a security interest in TMC.   (*Id.* ¶ 26.)

In December 2017, a meeting took place in Washington to discuss Predictuv Technologies' acquisition of TMC.   (*Id.* ¶ 27.)   Following the meeting, Granziano was told he could no longer be CEO, and that if he did not agree to leave, TMC's Board of Directors would shut down TMC—rendering all noteholders' securities worthless.   (*Id.* ¶ 30.) Granziano agreed to leave and he lost both his position and the majority of his TMC shares in January 2018.   (*Id.* ¶ 32.)   Defendant Szakács became the new CEO in April 2018.   (*Id.* ¶ 36.)

On August 7, 2018, Defendant Hill informed noteholders that TMC would be closing and that Predictuv Technologies was in the process of making an offer to purchase the company.   (*Id.* ¶ 43.)   The correspondence requested that all noteholders reply in

support of TMC's acquisition by Predictuv Technologies and threatened that the alternative would be for TMC to shut down, causing the noteholders to lose their investments.  (*Id.* ¶¶ 44, 45.)

On January 7, 2019, Defendant Csende informed noteholders that Predictuv Technologies' acquisition of TMC was complete.  (*Id.* ¶ 51.)  However, on June 28, 2019, Defendant Hill informed noteholders that the acquisition had fallen through.  (*Id.* ¶ 65.) Plaintiff believes Hill's information was inaccurate and that the acquisition did in fact go through.  (*Id.* ¶ 66.)  Plaintiff has not received any communication from TMC since June 28, 2019.  (*Id.* ¶ 67.)

## II.  Procedural History

On February 25, 2020, Plaintiff filed a Complaint in the Superior Court of California, County of San Diego, alleging causes of action against the TMC Defendants for (1) breach of contract, (2) breach of fiduciary duty, and (3) fraud.  The Complaint further alleged causes of action against the Predictuv Defendants for (1) intentional interference with contractual relations inducing breach of contract, (2) intentional interference with contractual relations by interference with performance, and (3) interference with prospective economic advantage (the "intentional interference claims").  (*See* ECF No. 1-2.)  On March 30, 2020, Defendants removed this case to federal court pursuant to 28 U.S.C. § 1441(b).  (ECF No. 1.)

On April 6, 2020, Defendants TMC and Kelvin Hill filed a motion to dismiss, (ECF No. 4); on April 20, 2020, Defendants Predictuv Technologies, Inc and Predictuv LLC, (ECF No. 7), and Vivien Szakács, (ECF No. 12), moved to dismiss; and on April 22, 2020, Defendant Christopher Kiel filed a motion to dismiss.  (ECF No. 16.)  The Honorable Anthony J. Battaglia took the motions under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1) (ECF No. 27), and subsequently this action was transferred to the undersigned.  (ECF No. 41.)  On March 25, 2021, the Court granted Defendants' Motions to Dismiss and granted Plaintiff leave to amend his complaint.  (ECF No. 48.)

/ / /

On April 15, 2021, Plaintiff filed the operative First Amended Complaint.  (ECF No. 50.)  On May 5, 2021, Defendants TMC, Zsolt Csende, Kelvin Hill, and Vivien Szakács filed the instant Motion to Dismiss.  (ECF No. 52.)

## ANALYSIS

### I.      Federal Rule of Civil Procedure Rule 12(b)(2)

#### A.      *Legal Standard*

"A Court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations."  *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1135 (S.D. Cal. 2018).  Constitutionally, "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Statutorily, "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Civ. Proc. Code § 410.10.

The Supreme Court has recognized "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."  *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. ___, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  *Id.* (quoting *Goodyear*, 564 U.S. at 924).  "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State."  *Id.* (emphasis in original) (citing *Goodyear*, 564 U.S. at 919).

For a court to exercise specific jurisdiction, by contrast, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"  *Id.* (alterations and emphasis in original) (quoting *Daimler*, 571 U.S. at 127 (2014)) (citing *Burger King Corp. v.*

4

*Rudzewicz*, 471 U.S. 462, 472–473 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id.* (alteration in original) (quoting *Goodyear*, 564 U.S. at 919).  "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Id.* (quoting *Goodyear*, 564 U.S. at 919).

### B.   Analysis

Seeking dismissal, Defendants argue that this Court lacks personal jurisdiction over them under Rule 12(b)(2).  As set forth below, Defendants are correct.

### 1.   General Jurisdiction

Defendants argue that the Court lacks general jurisdiction because there is no evidence that Defendants "have or had substantial or continuous and systematic contacts with California."  (MTD at 2.)  A forum state has general jurisdiction over a defendant when the defendant consents to jurisdiction, is served within that state, or is domiciled within that state.  *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011).  Alternatively, a defendant is subject to general jurisdiction when its contacts with the forum state are "continuous and systematic," *CollegeSource, Inc. v. Academy One, Inc.*, 653 F.3d 1066, 1074 (9th Cir. 2011) (quoting *Goodyear*, 564 U.S. at 919), and "so substantial . . . as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities."  *Id.*  (quoting *King v. Am. Family Mut. Ins. Co.*, 632 F.3d 570, 579 (9th Cir. 2011)).  Continuous and systematic contacts is "an exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state . . . ."  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Here, Plaintiff has not alleged sufficient facts to establish general jurisdiction.  Plaintiff has not established that any of the Defendants have consented to jurisdiction in California, have been served process in California, or are domiciled in California.

Additionally, Plaintiff has not established that Defendants have made "continuous and systematic" and "substantial" contacts with California. Indeed, Plaintiff's First Amended Complaint alleges only that (1) Plaintiff's causes of action stem from a meeting in San Diego, California between Defendant Predictuv Technologies and Defendant TMC's former CEO (FAC ¶ 18); and (2) Defendant TMC's managing partner of its automotive team was "regularly and actively cultivating business . . . in California" on two listed occasions. (*Id.* ¶ 21.) It is undisputed that TMC is a corporation formed in the State of Washington with its principal place of business in Washington. (MTD at 2; FAC ¶ 2.) All of TMC's obligations under the contract at issue in this case were to be fulfilled in Washington. (MTD at 2.) Defendants state that Kelvin Hill is a lifelong resident of Washington and never has traveled to California on behalf of TMC or for any business related to the case at issue. (*Id.* at 3.) Further, Defendants state that Vivien Szakács lives in Texas and never has traveled to California on behalf of TMC or for any business related to the case at issue. (*Id.*) Finally, Defendants state that Zolt Csende does not live in California and never has traveled to California on behalf of TMC or for any business related to the case at issue. (*Id.*) None of the Specially Appearing Defendants are subject to the Court's general jurisdiction because they lack substantial, continuous, and systematic contact with California. *See Helicopteros Nacionales de Colombia*, 466 U.S. at 416 (finding that one trip to the forum state by defendant's CEO for purposes of contract negotiation was not continuous and systematic). Additionally, Plaintiff fails to make specific allegations that general jurisdiction exists in his First Amended Complaint. (*See generally* FAC.)

### 2. *Specific Jurisdiction*

Although Plaintiff contends that the Court's specific personal jurisdiction is proper based on a single meeting that took place in San Diego, California, on October 19, 2017, (FAC ¶ 18), there are no allegations that Defendants Hill, Csende, or Szakács ("Individual Defendants") attended the October 2017 meeting. (*See generally id.*) The meeting was attended by individuals making up Predictuv Technologies Inc. and TMC's then-Chief

Executive Officer Dean Granziano.  (*Id.* ¶ 18.)  Plaintiff alleges that the "underlying controversy in this case arises directly out of [the meeting] and contact with San Diego and this forum." (*Id.* ¶ 19.)  Plaintiff further contends that jurisdiction comports with fair play and substantial justice because the Defendants are "joint entrepreneurs, shareholders, officers, and directors" of "the entity Defendants." (*Id.* ¶ 20.)

Jurisdiction over each defendant must be assessed individually.  *Calder v. Jones*, 465 U.S. 783, 790 (1984).  Due process requires "fair warning" when a forum seeks to exercise specific personal jurisdiction over an individual.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, (1985).  It is "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, (1958)).  This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.*  A purposeful availment analysis is used for suits sounding in contract. *Schwarzenegger*, 374 F.3d at 802.  To examine whether specific personal jurisdiction exists, the court looks to the contacts that "proximately result from actions by the defendant *himself*." *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015) (quoting *Burger King*, 471 U.S. at 475).  Physical entry into a state is a relevant contact, but the inquiry focuses on whether that entrance created a "substantial connection" with the state. *Id*.

Specific jurisdiction requires "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden*, 571 U.S. at 283 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The Ninth Circuit applies a three-part test to assess whether a non-resident defendant has sufficient contacts to be subject to a State's personal jurisdiction:

(1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)     the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Schwarzenegger,* 374 F.3d at 802). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

a.     Defendant TMC

Plaintiff alleges sufficient facts to satisfy the first prong of the Ninth Circuit's test—whether the defendant performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum. A separate three-part test is used to assess the first prong and "requires that the defendant have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Schwarzenegger*, 374 F.3d at 805 (internal citations omitted). Here, the CEO, acting on behalf of TMC, initiated intentional discussions with Defendant Predictuv Technologies for the "express purpose" of Predictuv Technologies acquiring TMC. (FAC ¶ 18.) Those discussions took place in San Diego, California. (*Id.* ¶ 19.) Defendant TMC could therefore reasonably anticipate that harm resulting from that meeting would likely be suffered in California.

However, Plaintiff fails the second prong of the Ninth Circuit's test—whether a particular claim arises out of forum-related activities. Plaintiff alleges that "but-for" the former CEO's actions on behalf of TMC, Plaintiff's claims would never have arisen. (*Id.*) While it is true that the Ninth Circuit applies a "but-for" test as described by Plaintiff, that

test "preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 385 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991). Here, that nexus is missing. At the meeting the parties only discussed the "potential applications of TMC's platforms for the financial investment and securities industry and the potential investment in TMC's proprietary products and services." (*Id.* ¶ 25.) This link is too attenuated to find that the underlying alleged harm in the instant case arose from TMC's actions at the initial meeting.[1] *See Matter of Star & Crescent Boat Co., Inc.*, No. 321CV00169BENJLB, 2021 WL 2988467, at *16 (S.D. Cal. July 15, 2021) (finding that insufficient evidence existed to allow the court to conclude that the harm actually arose from the movants' actions and not those of a third party even though the movants' actions were "certainly" a but-for cause of the harm). Thus, Plaintiff fails the second prong, and the Court **GRANTS** Defendants' Motion to Dismiss as to TMC and **DISMISSES** Plaintiff's claims against TMC for lack of personal jurisdiction under Rule 12(b)(2).

### b.    Individual Defendants

With respect to the Individual Defendants, Plaintiff fails the first prong of the Ninth Circuit's test—whether they purposefully directed their activities toward the forum. The First Amended Complaint does not provide evidence that any of the Individual Defendants attempted to avail themselves of California laws or direct activities towards California given that none of them attended the October 2017 meeting. (*See generally* FAC.) There are no allegations that Individual Defendants performed any intentional acts directed toward the forum state. (*Id.*) There is no evidence that any Individual Defendant has ever traveled to California to conduct business on behalf of TMC or that any Individual Defendant has ever reached out to California to conduct business on behalf of TMC. Although the First Amended Complaint alleges that the Individual Defendants are "joint

---

[1]    Further demonstrating the attenuation, Plaintiff was not even present at the meeting in San Diego, California, nor had he purchased the Convertible Security at issue. (*See generally* FAC ¶¶ 25, 26.)

entrepreneurs, shareholders, officers, and directors of the entity Defendants who stood to gain," (FAC ¶ 20), without more, that is not sufficient to find specific personal jurisdiction. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) (stating the court does not "impute a corporation's forum contacts to each of the corporation's employees").   Further, Plaintiff's additional allegations in his opposition do not provide a sufficient basis for the Court to exercise specific personal jurisdiction.  (*See generally* Opp'n.)  Therefore, the Court **GRANTS** Defendants' Motion as to Individual Defendants and **DISMISSES** Plaintiff's claims against them for lack of personal jurisdiction under Rule 12(b)(2).

## II.   Federal Rule of Civil Procedure Rule 12(b)(5)

### A.   *Legal Standard*

"Service of process is the mechanism by which the court acquires" jurisdiction over a defendant.  *United States v. 2,164 Watches, More or Less Bearing a Registered Trademark of Guess?, Inc.*, 366 F.3d 767, 771 (9th Cir. 2004).  Accordingly, a plaintiff's failure adequately to serve process results in the court's lack of jurisdiction over the defendant.  *See id.*  A defendant may mount a defense by claiming insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).  When such a challenge is advanced, the plaintiff "bear[s] the burden of establishing that service was valid under [Federal Rule of Civil Procedure] 4."  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).  "[I]n the absence of proper service of process, the district court has no power [over the defendant] unless the defendant has consented to jurisdiction or waived the lack of process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).

### B.   *Analysis*

Defendants Csende and Szakács move to dismiss under Rule 12(b)(5) for insufficient service of process.  Service of process requires a plaintiff to serve a copy of the summons and complaint on the defendant.  Fed. R. Civ. P. 4(c).  To serve a defendant individually, a plaintiff may serve process according to the laws of the state (1) where the district court is located, or (2) where service is made.  Fed. R. Civ. P. 4(e)(1).  Here, it is

undisputed that Defendant Csende has not been served and that Defendant Szakács was improperly served.  (MTD at 7; Opp'n at 17.)  Since Defendants Csende and Szakács have not been properly served in this case, the Court **GRANTS** Defendants Csende and Szakács's Motion to Dismiss for insufficient service of process under Rule 12(b)(5).

### III. Federal Rule of Civil Procedure Rule 12(b)(6)

Even if Plaintiff adequately had pled personal jurisdiction over Defendants, Plaintiff's causes of action would fail under Rule 12(b)(6) for failure to state a claim on which relief can be granted.

#### A. *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, the complaint must contain a "short and plain statement showing that the pleader is entitled to relief," backed by sufficient facts that make the claim "plausible on its face."  Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 566 U.S. at 678.  Rather, it demands enough factual content for the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The court must accept as true "all factual allegations in the complaint" and "construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  This presumption does not extend to conclusory allegations, "unwarranted deductions of fact, or unreasonable inferences."  *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

For claims based in fraud, Federal Rule of Civil Procedure 9(b) applies and imposes a heightened pleading standard.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018).  Under Rule 9(b), the plaintiff must state with "particularity the circumstances constituting the fraud or mistake."  Fed. R. Civ. P. 9(b).  This means that the

plaintiff must state the "who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). The plaintiff must also state "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson*, 889 F.3d at 964 (citations omitted).  In cases involving more than one defendant, Rule 9(b) does not allow the plaintiff to "lump [the] multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007).  Rather, the plaintiff must "differentiate their allegations" and "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Id.*  This ensures that each defendant has notice of their particular misconduct so that they can "defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations marks and citation omitted).

### B.  *Analysis*

#### 1.  *Breach of Contract*

Plaintiff alleges a cause of action for breach of contract, contending that the TMC Defendants failed to perform pursuant to the terms of the Convertible Security.  (FAC ¶¶ 71, 74.)  To have a viable breach of contract claim, there must be (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff.  *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016).

Here, Plaintiff properly alleges existence of a contract between himself and TMC in the form of a Convertible Security.  (*See* FAC Ex. A.)  Plaintiff contends that he "performed all conditions, covenants, and promises required by [him] to be performed in accordance with the terms and conditions of the Convertible Security," (*id.* ¶ 73), and that "Defendants" breached the terms of the Convertible Security.  (*Id.* ¶ 74.)  Finally, Plaintiff alleges damages in excess of $1,000,000.  (*Id.* ¶ 75.)  However, as Specially Appearing Defendants note, Plaintiff fails to allege that any of the Individual Defendants themselves are parties to the Convertible Security and thus liable for breaching it.  *See U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970) ("Directors and officers are not

personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually.").  Plaintiff does not cite any case law or facts sufficient to support his breach of contract claim against the Individual Defendants.

Plaintiff therefore fails to properly allege breach of contract against the Individual Defendants, and the Court thus **GRANTS** Defendants' Motion to Dismiss as to Defendants Hill, Csende, and Szakács.

### 2.   *Breach of Fiduciary Duty*

Plaintiff also alleges breach of fiduciary duty because Specially Appearing Defendants failed to perform pursuant to the terms of the Convertible Security.  (FAC ¶ 71.)  Breach of fiduciary duty occurs when there is (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damage proximately caused by the breach.  *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011).  A fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party."  *Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1338 (2012).

Plaintiff alleges that he is owed a fiduciary duty by TMC and Individual Defendants. (FAC ¶¶ 77–89.)  On the other hand, Defendants contend that Plaintiff, as a noteholder, is similarly situated to a warrant holder "to whom company directors and officers owe no fiduciary duty."  (MTD at 8; *see also Speirs v. Bluefire Ethanol Fuels, Inc*. 243 Cal. App. 4th 969, 982–83 (2015).)  Plaintiff does not cite any authority regarding a fiduciary duty owed to noteholders in particular, instead baldly alleging that he, as a debtor, is owed a fiduciary duty.  (FAC ¶ 78.)  The Court does not have to accept as true legal conclusions couched as factual allegations.  *See Twombly*, 550 U.S. at 555.  The Court therefore **GRANTS** Defendants' Motion to Dismiss under Rule 12(b)(6).

### 3.   *Fraud*

Finally, Plaintiff alleges a cause of action for fraud.  (*See* FAC ¶¶ 90–97.)  Plaintiff, however, fails to meet Rule 9(b)'s heightened pleading standard because he does not

13

differentiate the allegations against each Defendant as required.  Instead, Plaintiff simply alleges that the "written representations" by Defendant Hill "on behalf of and by the ratification of all the TMC Defendants" were "patently false when conveyed to Plaintiff." (*Id.* ¶ 91.)  This is insufficient to meet the heightened standard as it does not provide the specificity required by Rule 9(b).  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (dismissing the complaint because it did not attribute specific conduct to individual defendants or "specify either the time or place of the alleged wrongful conduct").  Thus, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** Plaintiff's fraud cause of action.

## IV.    Transfer of Venue

Finally, the Specially Appearing Defendants seek to transfer this case, though they do not specify to which venue.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  The moving party bears the burden of demonstrating that transfer is appropriate.  *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).  The Parties did not brief this issue, and the Specially Appearing Defendants have failed to meet their burden.  Accordingly, the Court **DENIES** the Specially Appearing Defendants' Motion to Transfer.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Specially Appearing Defendants' Motion to Dismiss (ECF No. 52), **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amended Complaint (ECF No. 49), and **DENIES** Specially Appearing Defendants' Motion to Transfer (ECF No. 52).

/ / /

/ / /

/ / /

1       Plaintiff **MAY FILE** an amended complaint curing the deficiencies outlined in this

2  Order within <u>fourteen (14) days</u> of the electronic docketing of this Order.  *Should Plaintiff*

3  *elect not to file a timely amended complaint, this action will be dismissed without prejudice*

4  *without further Order of the Court.*

5       **IT IS SO ORDERED.**

6  Dated:  November 19, 2021

7

8                        Honorable Todd W. Robinson

                          United States District Judge

20-CV-611 TWR (DEB)